UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Kenneth Cartwright, | ) |
| Plaintiff, | ) Case No.: 1:22-cv-00038 |
| vs. | ) Judge Michael R. Barrett |
| d.e. Foxx & Associates, Inc., | ) |
| Defendant. | ) |

**OPINION & ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 20). Plaintiff has filed a memorandum in opposition (Doc. 23), to which Defendant has replied (Doc. 25). For the reasons that follow, Defendant's Motion will be GRANTED.

I. BACKGROUND

**Plaintiff's employment history with Defendant.** On February 7, 2005, Plaintiff Kenneth Cartwright began employment as a Corporate Logistics Manager for XLC Services, a division of Defendant d.e. Foxx & Associates, Inc.[1] (Doc. 18-3). After three-to-four years in this role, he was promoted to Vice President of Operations for XLC. (Cartwright dep., Doc. 18 PAGEID 86 (33:12–35:5)). In 2018, Cartwright transferred to

---

[1] d.e. Foxx is a holding company for subsidiaries FX Facility Group, Versatex, and XLC Services. XLC Services is a strategic contract and labor provider for manufacturing companies and hospital systems. FX Facility Group provides facility maintenance and construction services. Versatex is a managed service provider that works with health care systems and higher education institutions. (Berry dep., Doc. 19 PAGEID 299–300 (7:1–8:12)).

newly-created division Versatex.  (Id. PAGEID 86 (35:6–36:10)).[2]  Versatex provides "tail spend" management services to its clients to help them purchase for less.  (Cartwright dep., Doc. 18 PAGEID 82 (19:1–20:10); Berry dep., Doc. 19 PAGEID 299–300 (7:7–10:22)).  Cartwright was a Business Development Manager (BDM) at Versatex.  (Berry dep., Doc. 19 PAGEID 301 (12:12–13:15)).  So were Diane Favors and Dave Kopecky.  (Id., PAGEID 302 (17:15–20)).  Favors is 5 years older than Cartwright; Kopecky is 10 years younger.  (*See* Doc. 18-7).[3]

In early August 2019, LaVonn Berry[4] sent identical memos to Cartwright, Favors, and Kopecky titled "Business Development Manager (BDM) Work Expectations".  (*See, e.g.*, Doc. 18-4; Berry dep., Doc. 19 PAGEID 315 (68:22–69:11)).  Each BDM was responsible for securing at least two contracts per year, with specific metrics attached.  (Doc. 18-4).  By March 2020, seven months later, no BDM had made any sales.  Cartwright, Favors, and Kopecky (and other d.e. Foxx employees) were then temporarily furloughed (for approximately 30 days) in response to the COVID-19 pandemic.  (Doc. 18-8).  They returned in May 2020, but still made no sales.  (Cartwright dep., Doc. 18 PAGEID 102 (100:20–24); PAGEID 105 (110:10–17)).

---

[2] For some period of time after his transfer, Cartwright continued to "sell" for both XLC and Versatex. (Berry dep., Doc. 19 PAGEID 300 (8:15–9:1); *see* Cartwright dep., Doc. 18 PAGEID 87 (39:4–40:2)).

[3] Favors was born in 1959, Cartwright in 1964, and Kopecky in 1974.  (*See* Doc. 18-7).

[4] Berry was hired by d.e. Foxx on October 10, 2018, reporting then (and in 2020) to CEO Gerald Sparkman.  (Berry dep., Doc. 19 PAGEID 299 (6:9–19)).

In July 2020, Berry issued Performance Improvement Plans (PIPs) to Cartwright, Favors, and Kopecky. (*See, e.g.*, Doc. 18-11; Berry dep., Doc. 19 PAGEID 315 (69:16–70:13)). Cartwright's PIP stated in part:

> This Performance Improvement Plan Memo is serving as a notice of your lack of performance as it relates to your annual sales goals as a Business Development Manager for Versatex. As you will recall on your comp memo dated August 5, 2019, all BDMs have a goal of 3 deals closed per year with a minimum requirement of two deals every year. As of today's date, it has been 15 months with you operating as a full BDM for Versatex and you have officially missed the annual requirement for your initial 12 months. As a result, we need to work on a plan to improve your performance immediately, to align with company standards and requirements.

(Doc. 18-11 PAGEID 174).[5] Berry gave Cartwright until September 30, 2020 to complete his PIP. (Id. PAGEID 178). When deposed, Cartwright testified that neither he nor any "business development person" made any sales from August 2019 to October 2020. (Cartwright dep., Doc. 18 PAGEID 109 (125:12–24)).

Cartwright, Favors, and Kopecky were terminated for failure to meet their sales requirements. (Berry dep., Doc. 19 PAGEID 302 (18:10–19:25)). They were not replaced. (Id.).

---

[5] Berry also chided Cartwright for substantially exceeding his vacation allowance, noting:

> Also, in working with HR on your [PIP], I confirmed that last year, 2019, you took 200 hours of Vacation time (not Bereavement or Holiday) when your scheduled Company allotment and maximum Vacation time was and remains only 120 hours per year or 3 weeks. I am sure that these extra used Vacation Days could have assisted you in advancing some of your deals to signed status much quicker. Please be sure to use your Vacation time in accordance with company policy going forward, the extra sales time will only serve to also improve your performance. HR sent me a report and at last check as for July, 2020, you are 174 hours Negative on Vacation hours.

(Doc. 18-11 PAGEID 174).

**Plaintiff's termination and this lawsuit.** Kenneth Cartwright was terminated on October 2, 2020. (*See* Doc. 18-13 PAGEID 180.) He subsequently filed a four-count Complaint alleging both age and disability discrimination (in violation of federal and state law). (Doc. 3).[6] Cartwright has since withdrawn his claims for disability discrimination. (Doc. 23 PAGEID 360 n.1). Accordingly, the Court will consider his age discrimination claims only.

## II. LAW & ANALYSIS

**Standard.** Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.* On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. Additionally, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

---

[6] Cartwright filed his Complaint in the Hamilton County Court of Common Pleas on December 27, 2021. (*See* Doc. 3). Defendant timely removed it to the Southern District of Ohio on January 19, 2022. (Doc. 1).

**The statutes.** The federal Age Discrimination in Employment Act ("ADEA") protects "individuals who are at least 40 years of age" and prohibits an employer from discharging any individual "because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a). Similarly, Ohio's statutory counterpart provides that no employer shall "discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job." Ohio Rev. Code § 4112.14(A). Age discrimination claims brought under the Ohio statute are "analyzed under the same standards as federal claims brought under the [ADEA]." *Wharton v. Gorman-Rupp Co.*, 309 F. App'x 990, 995 (6th Cir. 2009) (citations omitted).

Under the ADEA, a claim of age discrimination may be proven by either direct or circumstantial evidence. *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 723 (6th Cir. 2012) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)). To prevail, "it is not sufficient for the plaintiff to show that age was a motivating factor in the adverse action; rather, the ADEA's 'because of' language requires that a plaintiff 'prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the "but-for" cause of the challenged employer decision.'" *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)). Notably, the direct and circumstantial "evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." Id. (quoting *Kline v. TVA*, 128 F.3d 337, 348–49 (6th Cir. 1997)).

**Direct evidence.** "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Scheick*, 766 F.3d at 530 (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)). In determining whether age

5

was the "but for" cause of the employment decision, "the inquiry includes both a predisposition to discriminate and that the employer acted on that predisposition." Id.  In evaluating "statements allegedly showing an employer's age bias[,]" the Court considers whether the statements were: (1) made by a decision-maker; (2) made in relation to the decision-making process; (3) not isolated, vague or ambiguous; and (4) made proximate in time to the discriminatory act. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 477–78 (6th Cir. 2002).

As direct evidence of discrimination, Cartwright points to statements (purportedly) made to him by Chavon Phillips, a "Corporate Human Resources" representative[7]. During his deposition, Cartwright testified as follows:

> Q. Are there any facts, Ken, you're relying on to support your claim that your termination was because you were over 40?
>
> . . . .
>
> Q. Well, it could be communications with somebody, it could be – there are a number of things other than documentation.  So communications or something that's not documentary that you believe is a fact that supports your claim that you were terminated because you were over 40.
>
> A. Just references, put it that way.  Just references to what's insinuated.
>
> Q. References or insinuations about what?
>
> A. Coming from HR, basically, in terms of some of the premises, you know, not only, you know, some of the – [CEO] Gerald [Sparkman], in particular, didn't care for me, but also in terms of, you know, **they're looking to get in, again, younger people**.
>
> Q. And who told you that?
>
> A. HR Chavon.

---

[7] (*See* Doc. 18-8).

6

> Q. So any time that you say HR, you're referring to Chavon?
>
> A. Pretty much. **It was a – it was a norm conversation in the company in terms of younger, younger, younger.** I'm sure it still exists today.
>
> Q. And is it your testimony that Chavon said those things to you?
>
> A. Yeah.
>
> . . . .
>
> Q. **Did Chavon tell you that she thought that the company was trying to get younger employees in place?**
>
> A. **Absolutely.**
>
> Q. And did – when did she tell you these things?
>
> A. During a conversation **when all this transpired**. Even before that, normal conversation.

(Cartwright dep., Doc. 18 PAGEID 122 (177:23–180:16) (emphases added)). Otherwise, Cartwright testified:

> Q. No one from d.e. Foxx ever said anything to you suggesting that your termination had anything to do with your age, correct?
>
> A. Not directly.
>
> Q. Indirectly?
>
> A. A lot of insinuations, conversations.
>
> Q. That had to do with your age?
>
> A. Ages of the demographics of d.e. Foxx overall.
>
> . . . .
>
> Q. So no one from d.e. Foxx ever said anything to you directly suggesting that your termination had to do with your age, right?
>
> A. Not directly.

(Cartwright dep., Doc. 18 PAGEID 117 (159:24–160:9), PAGEID 118 (161:1–4)).

7

True, the statements attributed to Phillips are "not" ambiguous[8], satisfying one of the four factors. But as to the other three, there is no evidence that she had *any* involvement in the decision to terminate Cartwright[9] *and* Cartwright failed to temporally connect her statements to his termination. "[W]hen all this transpired" is, in the Court's view, too inexact.[10] Chavon Phillips' statements, therefore, even if believed, fail to

---

[8] The Sixth Circuit has explained that statements making a direct reference to age, such as statements about wanting "someone younger" are not ambiguous and, if believed, do not require an inference to conclude that age was the but-for cause of an employment decision. *Scheick*, 766 F.3d at 531.

[9] *Cf. Scheick*, 766 F.3d at 531 ("[Defendant] argues that there is ambiguity about whether the statements [made by McAran about wanting 'someone younger'] reflected the intention of the decisionmaker. However, because there was evidence that both McAran and the Board were involved in making the decision, it is immaterial whether McAran was acting at the behest of the Board, or on his own with input from the Board. *Cf. Brown v. Packaging Corp. of Am.*, 338 F.3d 586, 589–90 (6th Cir. 2003) (statement by supervisor with no involvement in the decision was not direct evidence of age discrimination). Thus, [Plaintiff] presented evidence which, if believed, would require the conclusion that age was the but-for cause of [Defendant's] decision not to renew [Plaintiff's] contract.").

[10] Cartwright recognizes this deficiency and attempts to remediate his testimony through a declaration he attaches to his memorandum in opposition (to Defendant's summary judgment motion). (*See* Cartwright decl., Doc. 23-2). In it, he testifies that *if* he had been asked "further questions in [his] deposition about the specifics of [his] conversations with Chavon, the number of conversations, and what it meant as to [his] statement, 'when all of this transpired[,]'" he would have said:

   a. The conversations with Chavon that the company intended to hire younger employees occurred in approximately 4-6 occasions in the time period of 2020 and up and until my termination of October 2, 2020. These conversations occurred while I was asking her for her advice as a HR representative.
   b. Her most recent statement occurred at or near the time of my termination. That statement she made to me was that because of my age of being over 40, I was being included in the category of employees being terminated in October of 2020 so that the company could hire younger employees as part of the organization.

(*Id.* ¶¶ 2, 3). In reply, Defendant argues, correctly, that Cartwright "cannot create alleged issues of fact by contradicting his deposition testimony." (Doc. 25 PAGEID 409 (citing *Whitaker v. Wallace*, 170 F.3d 541, 543 n.1 (6th Cir. 1999); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 459–60 (6th Cir. 1986) (citing *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984))). While Cartwright's declaration is more of an elaboration (as opposed to a contradiction), its purpose is the same.

What's more, contrary to Cartwright's suggestion, Defendant had *no* obligation to ask further questions in support of his age discrimination claims. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an **absence** of evidence to support the nonmoving party's case.") (emphasis added). After all, Cartwright's deposition was taken by Defendant as if on cross-examination. *See* Fed. R. Civ. P. 30(c)(1). His counsel chose not to ask him any questions on direct examination, to include ones about the "timing and substance" of the conversations he had with Phillips (*see* Doc. 23 PAGEID 369). The Court must presume this choice was intentional and strategic. (*Cf.* Berry dep.,

constitute direct evidence of age discrimination. Still, Cartwright's claims can survive summary judgment if there is sufficient circumstantial evidence of age discrimination, which the undersigned will consider next.

**Circumstantial evidence.** The Sixth Circuit analyzes ADEA claims based on circumstantial evidence under the familiar *McDonnell Douglas*[11] burden-shifting framework and, to establish a prima facie case of age discrimination, the plaintiff must show that he: (1) was at least 40 years old; (2) suffered an adverse employment action; (3) was qualified for the position he held; and (4) was replaced by a person outside the protected class. *Geiger v. Tower Auto.*, 579 F.3d 614, 622–23 (6th Cir. 2009). To satisfy the fourth element, the plaintiff alternatively may show that the defendant "treated similarly situated, non-protected employees more favorably." *Snyder v. Pierre's French Ice Cream Co.*, 589 F. App'x 767, 772 (6th Cir. 2014) (quoting *Mickey v. Zeidler Tool & Die Co.*, 513 F.3d 516, 521–22 (6th Cir. 2008)). If the plaintiff sets forth a prima facie case, the burden shifts to the defendant to proffer a legitimate, non-discriminatory basis for the termination. Id. If the defendant carries that burden, the plaintiff can survive summary judgment by demonstrating pretext. *See Spengler v. Worthington Cylinders*, 615 F.3d 481, 493 (6th Cir. 2010).

Cartwright obviously meets the first two elements. But he cannot meet the fourth one. No one younger, in fact no one at all, replaced Cartwright. And (alternatively), Defendant also terminated (similarly situated) BDM Dave Kopecky, who is 10 years

---

Doc. 19 PAGEID 298 (indexing cross-examination by Mr. Byrne (on behalf of Plaintiff), direct examination by Mr. Shank (on behalf of Defendant), and re-cross-examination by Mr. Byrne)).

[11] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as subsequently modified by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

*younger* than Cartwright.

Counsel for Cartwright argues that "replacement is not the only way to establish a prima facie case when other circumstances exist that support an inference of discrimination." (Doc. 23 PAGEID 375). Chavon Phillips' "age related" statements, "if they are not such that they cannot be considered direct evidence, are additional circumstances that support an inference of discrimination and therefore allow Cartwright to establish the existence of a prima facie case." (Id.). *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012), cited in support, does not stand for this proposition, however. At issue there was not whether Peggy Blizzard had been replaced, but, instead, whether "to affirm the district court's conclusion that the **age difference** between Blizzard and **her replacement** was **significant**." 698 F.3d at 283 (emphasis added). Finding that "[t]he district court's decision was a reasonable exercise of its discretion under *Grosjean* [*v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003),]" the Sixth Circuit proceeded to examine the defendant's legitimate business reasons and pretext. Id. at 284–86. In reference to the latter, the Court noted, "The three-part test [for pretext] need not be applied rigidly. Rather, '[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?'" Id. at 285 (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)).

The elements of a prima facie case of age discrimination are well-established and fixed. The undersigned has no flexibility to re-craft the fourth element as Cartwright wishes. Because Plaintiff Kenneth Cartwright fails to state a prima facie case of age discrimination, our analysis ends. Defendant d.e. Foxx & Associates, Inc is entitled to summary judgment in its favor.

### III. CONCLUSION

Consistent with the foregoing, Defendant's Motion for Summary Judgment (Doc. 20) is hereby **GRANTED**.

**IT IS SO ORDERED.**  s/ *Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court